IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


BILLY SPENCER MIDKIFF, II,

      Plaintiff,

v.                        CASE NO. 2:11-cv-00130

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Billy Spencer Midkiff, II (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on July 24, 2007, alleging disability as of March 1, 2003, due to arthritis, dementia and depression.  (Tr. at 109-20, 131.)  The claims were denied initially and upon reconsideration.  (Tr. at 61-70, 75-80.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 81.)  The hearing was held on February 20, 2009, before the Honorable Rosanne M. Dummer.  (Tr. at 25-56.)  By decision dated September 24, 2009, the ALJ determined that Claimant

was not entitled to benefits.   (Tr. at 8-24.)   The ALJ's decision became the final decision of the Commissioner on December 28, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.)   On March 1, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Review of the Commissioner's Decision

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.   See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).   A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. §§ 404.1520, 416.920 (2009).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.   Id. §§ 404.1520(a), 416.920(a).   The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   Id. §§ 404.1520(b), 416.920(b).   If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.   Id. §§ 404.1520(c), 416.920(c).   If a severe

2

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

3

13.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bipolar disorder, anxiety disorder (not otherwise specified), mild bilateral chondromalacia patellae, and history of substance abuse (cannabis).  (Tr. at 14.)  At the third inquiry, the ALJ concluded that Claimant's impairments, considered individually or in combination, do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 15-17.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations.  (Tr. at 17-22.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 22.)  Nevertheless, the ALJ concluded that Claimant could perform a variety of jobs at a range of exertional levels, which exist in significant numbers in the national economy.  (Tr. at 22-24.)  On this basis, benefits were denied.  (Tr. at 24.)

Scope of Review

     The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept
> as   sufficient   to   support   a   particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational." Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the
Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 27 years old at the time of the administrative
hearing. (Tr. at 28.) Claimant quit school at age 16 or 17, but
he earned a GED. (Tr. at 46.) His prior employment has been
sporadic, consisting of Taco Bell crew member, customer service at
Speedway, laborer in a family construction company, and door-to-
door insurance sales. (Tr. at 44-48.)

The Disability Claim

Due to Claimant's spotty work record, he has limited insurance
coverage for the purpose of DIB, that is, only from the date of
alleged onset (March 1, 2003) through his date last insured (June
30, 2004). According to Claimant's Disability Report, he was
employed as a laborer and as a salesman in 2003 and 20004. (Tr. at
132.) Claimant's Work Activity Reports indicate that he worked for

5

two weeks in March, 2003 as a sales representative (tr. at 144); from June 1, 2003 to August 31, 2003, he worked as a construction laborer (tr. at 144); in October 2003, he worked as a self-employed dry wall hanger (tr. at 138); during the month of June, 2004, he again worked in the family construction company (tr. at 145).  In each instance, he indicated that he stopped working because of his medical condition.

There is virtually no medical evidence for this period.  On June 9, 2004, he complained of chest pain and palpitations; an echocardiogram was read as "normal." (Tr. at 333-34.)  On June 15, 2004, Claimant had x-rays of his chest and left third finger, with no abnormalities seen.  (Tr. at 335-36.)  He sought treatment during 2004 at Lincoln [Country] Primary Care Center for toothache (tr. at 322), left-sided chest pain and nerves (tr. at 321), anxiety and mild depression (tr. at 320).

Based on this scant record, the court **FINDS** that the Commissioner's decision denying Claimant's application for disability insurance benefits is supported by substantial evidence, and **AFFIRMS** that decision.

The Supplemental Security Income Claim

The pertinent time period for evaluation of Claimant's application for SSI is August 1, 2007 through September 24, 2009 (the date of the ALJ's decision).

The court has reviewed all the evidence of record and will

address it as it relates to Claimant's challenges to the Commissioner's decision.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence for two reasons: (1) considered in combination, Claimant's physical and mental impairments meet or equal the criteria of a Listing; and (2) the ALJ committed reversible error by restricting counsel's cross-examination of the vocational expert ("VE"). (Pl.'s Br. at 3, 5-8.)

The Commissioner responds that (1) Claimant failed to prove that he was disabled during the relevant period; and (2) the ALJ properly limited the scope of the VE's testimony. (Def.'s Br. at 4-20.)

<u>Impairments Considered in Combination</u>

Claimant contends that his "physical and mental impairments in combination equal a Listed Impairment." (Pl.'s Br. at 5.) Claimant does not specify any particular Listing which he claims to meet or equal. In the alternative, Claimant asserts that his impairments prevent him from engaging in substantial gainful activity. <u>Id.</u> Finally, he argues that his testimony is entitled to full credibility. <u>Id.</u>

The Commissioner responds that Claimant's knee impairment received only conservative treatment, and that his knees showed no significant abnormalities. With respect to Claimant's mental

7

impairments, the Commissioner argues that he only sporadically sought treatment and that agency consultants determined that he could perform simple work in a setting without frequent contact with others. (Def.'s Br. at 4-7.)

The ALJ's decision includes the following pertinent paragraph:

Furthermore, after reviewing all of the evidence, including the medical records, and considering the interactive and cumulative effects of all medically determinable impairments, including any impairments that are "severe" and/or "non-severe," the undersigned finds that the claimant does not have a combination of impairments that meet or medically equal any listed impairment in Appendix 1 to Subpart P of Regulations No. 4.

(Tr. at 17.) The ALJ's decision contains an exhaustive recitation of the evidence, and careful analysis of that evidence as it pertains to the applicable regulations.

## Physical Impairment

Claimant's knee impairment, mild bilateral chondromalacia patellae, is the softening and breakdown of the cartilage that lines the underside of the kneecap. The major symptoms are a grating or grinding sensation when the knee is bent, and pain after sitting for a long time, according to the National Institute of Health. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001488/ (checked February 2, 2012). Temporary resting and taking nonsteroidal anti-inflammatory drugs such as ibuprofen, naproxen or aspirin may relieve pain; physical therapy may be helpful. Id.

The medical evidence from the period August 1, 2007 through

8

September, 2009, demonstrates that Claimant's knee impairment is not disabling.  X-rays taken on August 1, 2007 of Claimant's knees were interpreted as "negative," showing no abnormality and no cartilage loss.  (Tr. at 339.)

Scott Orthopedic Center reported that on August 24, 2007, Dr. Kyle R. Hegg diagnosed Claimant as having chondromalacia patellae and discussed with him the four components of care of that condition:  non-steroidals, physical therapy, modification to activities, and weight loss.  (Tr. at 453-54.)

On October 16, 2007, a State agency non-examining consultant, Jennifer Anderson, reviewed the record and concluded that Claimant had no exertional limitations.  (Tr. at 358-65.)

On January 3, 2008, another State agency non-examining consultant, Rabah Boukhemis, M.D., reviewed the record and concluded that Claimant had "non severe limitations."  (Tr. at 418.)

On November 6, 2008, Claimant received an injection in his left knee at Scott Orthopedic Center.  (Tr. at 451-52.)  The report states that Claimant "does not have mechanical symptoms." (Tr. at 452.)  On June 15, 2009, Claimant was given another injection in his left knee, started on osteobiflex, given knee sleeves, and continued on Lortab.  (Tr. at 530.)

<u>Mental Impairment</u>

Claimant's treatment of his mental impairment for the relevant

9

time period is somewhat more extensive.  In July, 2007, he informed his wife that he had decided not to work and instead to sell copper.  (Tr. at 264.)  Not unexpectedly, this statement triggered an argument and his wife declared that she would take their child and leave him.  <u>Id.</u>  He then acted as if he were attempting to hang himself, and she had him involuntarily committed for evaluation.  (Tr. at 345.)  Due to over-crowding at Mildred Bateman Hospital, he was treated at St. Mary's Medical Center in Huntington.  (Tr. at 264.)  Claimant, then 26 years old, reported a 10-year history of depression with two prior suicide attempts.  <u>Id.</u>  He stated that he has used marijuana "daily for the past 14 years."  <u>Id.</u>  The diagnosis was "bipolar disorder not otherwise specified."  <u>Id.</u>  There is no discharge report.

Claimant's treatment at Prestera Mental Health Center began July 24, 2007.  (Tr. at 344.)  The initial assessment was that his dysfunctioning was "mild."  <u>Id.</u>  He denied substance abuse.  (Tr. at 345.)  The Axis I diagnosis was 311, depressive disorder; other diagnoses were 799.9 (deferred).  (Tr. at 347.)

Claimant underwent a consultative mental evaluation by Lester Sargent, M.A., on October 1, 2007.  (Tr. at 353.)  Claimant admitted to frequent use of marijuana and experimental use of cocaine and crystal methamphetamine.  (Tr. at 355.)  He was diagnosed with cannabis abuse and bipolar disorder, the latter based upon his report of "rapid alteration between manic and

10

depressive episodes that meet the symptom threshold criteria but not minimal duration criteria for manic, hypomanic or major depressive episodes." (Tr. at 356-57.)

On October 16, 2007, a State agency non-examining consultant, Joseph Kuzniar, Ed.D., reviewed the record and concluded that Claimant had impairments which were severe but not expected to last twelve months. (Exhibit 7F, tr. at 369.) The impairments were bipolar syndrome (tr. at 372), anxiety disorder (tr. at 374), and cannabis abuse (tr. at 377). Dr. Kuzniar opined that Claimant was "not significantly limited" in most mental activities, but "moderately limited" with respect to his abilities to work in coordination with or proximity to others without being distracted by them, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers and peers without distracting them or exhibiting behavioral extremes. (Tr. at 366-67.) Dr. Kuzniar commented:

> As of 7-10-08, i[t] is expected that the claimant would retain the capacity to understand, remember, and carry out routine instructions commensurate with past work. The capacity for managing social interaction demands would be at the low demand level. The capacity for adaptation would be somewhat reduced.

(Tr. at 368.) He rated Claimant as having "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence and page, and "one or two" episodes of decompensation, each of extended duration. (Tr. at 379.)

11

On December 22, 2007, another State agency non-examining consultant, Debra Lilly, Ph.D., found evidence of bipolar disorder (tr. at 534) and a substance addiction disorder (tr. at 539). She concluded that Claimant had "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence and page, and "one or two" episodes of decompensation, each of extended duration. (Tr. at 541.) As such, he did not meet the "B" criteria of Listing 12.04. (Tr. at 542.) Dr. Lilly also concluded that Claimant did not meet the "C" criteria of Listing 12.04. She commented as follows:

> The claimant is considered credible regarding activities but not limitations. He reports that he is responsible for the care of a small child, but contends that his wife must remind him to care for his own hygiene. He states that he has problems with concentration and memory, but completes own forms in file, plays video games, watches TV. He reports that he is afraid of people, but is able to shop.

(Tr. at 543.) In Exhibit 10F, also dated December 22, 2007, Dr. Lilly indicated that Claimant was "not significantly limited" in most mental activities, but "moderately limited" in his abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers and peers without distracting them or exhibiting behavioral extremes. (Tr. at 384-

85.)  In conclusion, Dr. Lilly commented that Claimant "retains the ability to learn and perform simple, unskilled, work-like activities that do not require frequent contact with others." (Tr. at 386.)

By letter dated January 18, 2008, Prestera Center advised that Claimant was being treated for bipolar disorder (most recent episode mixed, severe, with psychotic features) and anxiety disorder, not otherwise specified.  (Tr. at 420.)  An assessment dated November 5, 2008, reflected diagnoses of bipolar affective disorder, mixed, severe, with anxiety state, unspecified.  (Tr. at 433.)  Another assessment, completed May 27, 2008, states the same diagnoses.  (Tr. at 444.)  A third assessment, dated April 27, 2009, contains the same diagnoses, and notes the additional psychosocial stressor of a divorce hearing.  (Tr. at 527.)

<u>Analysis</u>

The Social Security regulations provide that

[i]n determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2009). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful

13

activity." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.   <u>Id.</u>   The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed.   <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983).

In an extremely detailed and exhaustive analysis of the evidence, the ALJ concluded that Claimant can perform medium work (lifting 25 pounds frequently), with moderate limitations in his abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. at 17.) The ALJ found that Claimant can understand, remember, and carry out routine instructions commensurate with his past work.  <u>Id.</u> He can perform simple, unskilled work-like activities in settings that do not require frequent contact with others.  <u>Id.</u>

There is no evidence in the record, except for Claimant's own testimony, which contradicts the ALJ's conclusions.   The ALJ appropriately discounted Claimant's testimony, noting that his

14

responses were "rather vague." (Tr. at 19.) The ALJ then wrote a
lengthy paragraph which describes the many activities in which
Claimant admittedly engaged which conflict with his statements of
his complete disability. Id.

The court finds that the ALJ's decision that Claimant is not
disabled by his combination of impairments is supported by
substantial evidence.

Cross-Examination of Vocational Expert

At the hearing before the ALJ, Melissa Glannon testified as a
vocational expert. (Tr. at 48-55.) The ALJ posed a series of
hypothetical questions, quoting and adopting the mental limitations
set forth in Exhibits 7F (tr. at 366-68) by Dr. Kuzniar, and 10F
(tr. at 384-86) by Dr. Lilly. Claimant's attorney was given an
opportunity to question the VE.

> ATTY: Ms. Glannon, if you look at Exhibit 10F, I
> guess what I'm trying to say, in the absence of the
> hypothetical, that the individual retains the ability to
> do the simple tasks, if you as a Vocational Expert looked
> solely at the limitations on 10F and the moderate
> limitations, would that individual be able to engage in
> any substantial gainful activity?
> VE: May I ask how you're defining moderate for that?
> ATTY: I didn't say moderate. If you just looked at
> this exhibit and that's all you had, would this person be
> able to engage in competitive employment?
> ALJ: Mr. Meisel, you'll have to explain that, which,
> which characteristics you're asking for, the definition
> of terms, and what the abilities are despite the moderate
> limitations. If you're not going to define moderate,
> then you need to state what limitations would, or what
> abilities would remain.
> ATTY: Your Honor, I'm, I'm, I'm afraid I'm a
> barefoot West Virginian, I, if the Vocational Expert
> can't answer the question. The question is if you as a

15

Vocational Exert were deciding whether or not you should advise someone to hire this individual and you got a document that had those X's with those moderates, would you be able to form an opinion?

ALJ: Mr. Meisel, I've asked you to clarify your question if you're going to use the terms moderate and what abilities remain. However, if you don't give the Vocational Expert any more guidance than that, then I will direct the Vocational Expert not to answer that.

ATTY: Well, Your Honor, I'd like to make a proffer to know what her answer would be in the absence of you instructing her not to answer.

ALJ: Counsel, I previously asked the Vocational Expert that question regarding Exhibit 10F and Exhibit 7F and I read the complete report, including pages 3 of both exhibits with the abilities that remain. If that is your question, Mr. Meisel, then I believe the Vocational Expert has already answered it. To the extent you want to differ from that question, then you need to state to the Vocational Expert exactly what you would like her to consider from that report and define the terms for her as you interpret them, please?

ATTY: Well, Your Honor, all I can say is I would ask that Ms. Glannon look at that exhibit and exclude the fact that this individual does not retain the ability to learn and perform simple unskilled work like activities in settings that do not require contact with others?

ALJ: So then what would remain, sir?

ATTY: I'm afraid I can't ask my question.

ALJ: All right. Anything further, Mr. Meisel?

ATTY: No, Your Honor.

(Tr. at 52-54.)

Claimant argues that the ALJ's "denial of adequate and thorough cross-examination by Counsel for Plaintiff amounts to a failure to properly develop the record" and "prevented Counsel for Plaintiff from making such an inquiry." (Pl.'s Br. at 8.)

The Commissioner responds that Claimant's attorney failed to pose a hypothetical question in vocational terms, and the ALJ's hypothetical question included all the limitations assessed.

(Def.'s Br. at 16-20.)

The court finds that the question which Claimant's attorney wanted to ask is the same question which was asked by the ALJ.  In other words, Claimant's counsel asked the VE if a person with the limitations set forth in Exhibit 10F could perform substantial gainful activity.  The VE had answered in the affirmative to the ALJ and provided extensive detail with respect to the types of jobs such a person could perform, and the numbers of such jobs in the national and local economies.  There was no error committed by the ALJ with respect to the cross-examination of the VE.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: February 14, 2012

Mary E. Stanley
United States Magistrate Judge